UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
FELICIA HAIMDAS,                                 :
                                                 :
                Petitioner,                      :     **MEMORANDUM OPINION**
                                                 :
        - against -                              :     09-CV-02034 (ENV) (MDG)
                                                 :
JAGMOHAN HAIMDAS,                                :
                                                 :
                Respondent.                      :
                                                 :
-----------------------------------------------------------------X

**VITALIANO, D.J.**

This action arises under the Hague Convention on international child abduction ("Hague Convention"), as implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610. Petitioner Felicia Haimdas, a United Kingdom resident, and respondent Jagmohan Haimdas, a United States resident, are the biological mother and father, respectively, of two boys aged 9 and 12 (the "children"). At issue is the father's alleged wrongful retention of his children in this country.

Trial will begin tomorrow, February 23, 2010. At the February 18th final pretrial conference, the Court granted petitioner's motion *in limine* to strike the report and preclude the testimony of respondent's expert witness, Dr. Monty Weinstein. At respondent's request, the Court granted expedited scheduling of his motion seeking reconsideration of that ruling. Dueling memoranda of law have been served, filed and considered. The Court now adheres to its original ruling.

**BACKGROUND**

Familiarity with the relevant facts and law is presumed. In brief, respondent asserts that,

1

in the event the Court finds petitioner has made out a prima facie case for the return of the children under the Hague Convention, the Court should further determine that both children prefer to remain with respondent in the United States and are old enough and mature enough for the so-called "age and maturity" defense to apply and for it to be outcome-determinative. See Hague Convention Art. 13 (if a child objects to return to his country of habitual residence after he has been wrongfully removed or retained elsewhere, and the child has attained a sufficient age and degree of maturity, it is appropriate for a court to take account of the child's objection).

In preparation to meet this defense, petitioner retained an expert, Dr. Glen Skoler, to evaluate the children and offer an expert opinion on their maturity levels. Dr. Skoler is a forensic psychologist, and is licensed as a psychologist by the District of Columbia and the states of Maryland, Pennsylvania and Virginia. After performing a psychological evaluation of the children, including the administration of a number of standardized psychological tests, Dr. Skoler submitted a report (the "Skoler Report") on October 5, 2009, stating his conclusion that the children are too immature for the Court to credit their statements about where they want to reside.

In turn, respondent retained Dr. Monty Weinstein, who is a marriage and family therapist and licensed to practice as such in the states of Florida, Georgia and North Carolina. On November 6, 2009, Dr. Weinstein submitted an expert report criticizing the Skoler Report and setting forth Dr. Weinstein's own contrary views and conclusions. Dr. Weinstein also stated in his report that he had himself administered one of the psychological tests to the children previously performed by Dr. Skoler, with conflicting results. Assuming the defense is reached at trial and Dr. Skoler is called to testify by and on behalf of the mother, the father indicated he would call Dr. Weinstein to testify. There is no dispute that the sole reason for calling either

witness is to provide expert proof that might assist the Court in assessing the maturity level of the children.  It is also undisputed that both witnesses claim expertise in psychology, which, both agree, is the discipline and special learning upon which their respective opinions rest.

## DISCUSSION

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 n.10, 113 S.Ct. 2786, 2796 n.10 (1993); Fed. R. Evid. 702 advisory committee's note (2000) ("[T]he admissibility of all expert testimony is governed by the principles of [Federal Rule of Evidence] 104(a) . . . . [T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").  The specific conditions for admissibility of expert testimony are enumerated in Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As required by this rule, a district court must make discrete fact determinations before allowing expert testimony: (1) whether the witness is qualified to be an expert "by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact.  See Nimely v. City of N.Y., 414 F.3d 381, 396-97 (2d Cir. 2005).  As to sequence, a court should first decide whether the expert has sufficient qualifications to testify before proceeding to the remaining factors.  See Zaremba v. Gen. Motors

3

Corp., 360 F.3d 355, 360 (2d Cir. 2004) (where an expert witness is insufficiently qualified, an analysis of the remaining factors "seems almost superfluous").

"A court must consider the 'totality of a witness's' background when evaluating the witness's qualifications to testify as an expert." Rosco, Inc. v. Mirror Lite Co., 506 F. Supp. 2d 137, 144-45 (E.D.N.Y. 2007) (quoting 29 WRIGHT & GOLD, FED. PRAC. & PROC. § 6265, at 246 (1997)); accord Keenan v. Mine Safety Appliances Co., No. 03-CV-0710, 2006 WL 2546551, at *2 (E.D.N.Y. Aug. 31, 2006). In particular, as part of the qualification inquiry, a court must ensure that the expert will be proffering opinions on issues or subject matter within his or her area of expertise. See Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 80 (2d Cir.1997). Ultimately, the determination of whether a witness possesses attributes sufficient to qualify as an expert witness in a particular case is within the Court's "broad discretion." Id. at 81.

As stated on the record at last Thursday's conference, the Court finds that Dr. Weinstein is not qualified to testify as an expert on the specific matter that he has been designated to address in this case – an assessment of the children's maturity based on psychological evaluation. Indeed, Dr. Weinstein's report and testimony are proffered by the respondent father, first and foremost, to counter the opinions rendered by Dr. Skoler, which are based on the results of psychological tests that Dr. Skoler performed on the children and in light of the experience and expertise that he has gained during his professional career as a licensed, practicing psychologist. Although Dr. Weinstein holds licenses to practice marriage and family therapy in three states, he has <u>never</u> been licensed to practice psychology <u>anywhere</u>.[1]

The distinction is hardly, as respondent would have it, trivial or a mere matter of semantics. In every state where Dr. Weinstein is licensed to practice marriage and family

---

[1] The Court specifically asked respondent to identify in his reconsideration motion papers any state or jurisdiction where Dr. Weinstein was or is statutorily authorized to perform psychological testing. He identified none.

4

therapy, "marriage and family therapy" and "psychology" are defined by law as substantively different professions[2] with commensurately separate licensing requirements and procedures. See Fla. Stat. Ann. §§ 490.004-009 (2009) (psychology); Fla. Stat. Ann. §§ 491.004-006 (2009) (marriage and family therapy); O.C.G.A. §§ 43-39-6--15 (2009) (psychology); O.C.G.A. §§ 43-10A-4-10, -13, -16 (2009) (marriage and family therapy); N.C. Gen. Stat. §§ 90-270.5-22 (2009) (psychology); N.C. Gen. Stat. §§ 90.270.49-55 (2009) (marriage and family therapy). Moreover, the laws of those states expressly and uniformly prohibit Dr. Weinstein and anyone else from parlaying a license to practice marriage and family therapy into a license to practice psychology,[3]

---

[2] Compare Fla. Stat. Ann. § 490.003(4) (2009) ("'Practice of psychology' means the observations, description, evaluation, interpretation, and modification of human behavior, by the use of scientific and applied psychological principles, methods, and procedures, for the purpose of describing, preventing, alleviating, or eliminating symptomatic, maladaptive, or undesired behavior and of enhancing interpersonal behavioral health and mental or psychological health. The ethical practice of psychology includes, but is not limited to, <u>psychological testing and the evaluation or assessment of personal characteristics such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning, including evaluation of mental competency to manage one's affairs and to participate in legal proceedings</u> . . . ." (emphasis added)) with Fla. Stat. Ann. § 491.003(8) (2009) ("The 'practice of marriage and family therapy' is defined as the use of scientific and applied marriage and family theories, methods, and procedures for the purpose of describing, evaluating, and modifying marital, family, and individual behavior, within the context of marital and family systems, including the context of marital formation and dissolution . . . ."); compare O.C.G.A. § 43-39-1(3) (2009) ("'To practice psychology' means to render or offer to render to individuals, groups, organizations, or the public for a fee or any remuneration, monetary or otherwise, any service involving the application of recognized principles, methods, and procedures of the science and profession of psychology, such as, but not limited to, diagnosing and treating mental and nervous disorders and illnesses, rendering opinions concerning diagnoses of mental disorders, including organic brain disorders and brain damage, engaging in neuropsychology, engaging in psychotherapy, <u>interviewing, administering, and interpreting tests of mental abilities, aptitudes, interests, and personality characteristics for such purposes as psychological classification or evaluation</u>, or for education or vocational placement, or for such purposes as psychological counseling, guidance, or readjustment." (emphasis added)) with O.C.G.A. § 43-10A-3(8) (2009) ("'Marriage and family therapy' means that specialty which evaluates and treats emotional and mental problems and conditions, whether cognitive, affective, or behavioral, resolves intrapersonal and interpersonal conflicts, and changes perception, attitudes, and behavior; all within the context of marital and family systems. Marriage and family therapy includes, without being limited to, individual, group, couple, sexual, family, and divorce therapy."); compare N.C. Gen Stat. § 90-270.2(8) (2009) ("Practice of psychology.--The observation, description, evaluation, interpretation, or modification of human behavior by the application of psychological principles, methods, and procedures for the purpose of preventing or eliminating symptomatic, maladaptive, or undesired behavior or of enhancing interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, or mental health. The practice of psychology includes, but is not limited to: <u>psychological testing and the evaluation or assessment of personal characteristics such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning</u> . . . ." (emphasis added)) with N.C. Gen. Stat. § 90-270.47(4) (2009) "'Practice of marriage and family therapy' means the rendering of professional marriage and family therapy services to individuals, couples, or families, singly or in groups, whether the services are offered directly to the general public or through organizations, either public or private, for a fee, monetary or otherwise.").

[3] Fla. Stat. Ann. §§ 490.012(1)(a), (c) (2009) ("No person shall hold herself or himself out by any professional title,

5

and the unauthorized practice of psychology or misrepresentation of oneself as a licensed psychologist is punishable as a misdemeanor crime. See Fla. Stat. Ann. § 490.012(4) (2009): O.C.G.A. § 43-39-19 (2009): N.C. Gen. Stat. § 90-270.17 (2009).

Plainly, Dr. Weinstein lacks the formal credentials to opine as an expert on the psychological analysis of the children's maturity provided in the Skoler Report, or to perform psychological tests on the children himself. To the extent that respondent seeks to rely on any past experience that Dr. Weinstein may have gleaned outside the licensed discipline of psychology to serve as the basis for a reliable and helpful expert opinion concerning psychology or psychological testing, the Court finds that the tendered witness fails the most elemental standard of qualification under Rule 702 for the opinion he seeks to offer. Specifically, the Court adheres to its determination that Dr. Weinstein is not qualified to opine as an expert regarding the adequacy of Dr. Skoler's psychological analysis or the psychological development and maturity level of the children. His testimony and report remain precluded. Cf. Kourkounakis v. Russo, 167 Fed. Appx. 255, 257 (2d Cir. 2006).

Nor will this Court qualify Dr. Weinstein to testify as an expert on the "credibility" of the Children. "Expert opinions that constitute evaluations of witness credibility, even when such

---

name, or description incorporating the word 'psychologist'" or "the words, or permutations of them, 'psychology,' 'psychological,' or 'psychodiagnostic,' or describe any test or report as psychological, unless such person holds a valid, active license" to practice psychology under Florida law); Fla. Stat. § 491.003(8)(c) (2009): "The terms 'diagnose' and 'treat' . . . shall not be construed to permit any person licensed, provisionally licensed, registered, or certified pursuant to this chapter [to practice marriage and family therapy] to describe or label any test, report, or procedure as 'psychological,' except to relate specifically to the definition of practice authorized in this subsection."); O.C.G.A. § 43-10A-22 (2009) ("Nothing in this chapter shall be construed to authorize persons licensed under this chapter [as professional counselors, social workers and marriage and family therapists] to perform psychological testing."); O.C.G.A. §§ 43-39-7, -17 ("A person who is not licensed under this chapter [as a psychologist] shall not practice psychology, shall not use the title 'psychologist,' and shall not imply that he or she is a psychologist" or "designate his or her occupation as a psychologist and shall not designate himself or herself by any other term or title which implies that he or she is practicing psychology."); N.C. Gen Stat. §§ 90-270.16(a), (c) (2009) ("[It] shall be a violation of this Article for any person not licensed in accordance with the provisions of this Article [regarding psychologists] to represent himself or herself as a psychologist, licensed psychologist, licensed psychological associate, or health services provider in psychology," or "to use a title or description of services including the term 'psychology,' or any of its derivatives . . . singly or in conjunction with modifiers such as 'licensed,' 'practicing,' 'certified,' or 'registered.'").

6

evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." Nimely, 414 F.3d at 398. The credibility and weight of testimony are questions to be decided exclusively by the finder of fact – in the bench trial of this action, the Court – and thus it is well-established that "witnesses may not opine as to the credibility of the testimony of other witnesses at the trial." United States v. Scop, 846 F.2d 135, 142 (2d Cir.1988); see Chacko v. DynAir Svcs., Inc., 272 Fed.Appx. 111, 112 (2d Cir. 2008) ("The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact."); Jafri v. Rubin, 133 F.3d 907 (2d Cir. 1998) (affirming presiding judge's ruling on the credibility of a witness in a bench trial and noting that assessments of the credibility of the witnesses are peculiarly within the province of the trier of fact and entitled to considerable deference).

## CONCLUSION

The Court has already determined *in limine* that Dr. Monty Weinstein is not qualified under Federal Rule of Evidence 702 to offer expert testimony and to render an opinion grounded in the discipline of psychology as to the maturity level of the children of the petitioner mother and respondent father, should they be called to testify as to their preference with respect to their future residence. Respondent has presented no new facts or additional law to alter the Court's analysis. Upon reconsideration, the Court adheres to its original decision. The testimony and report of Dr. Monty Weinstein is precluded.

DATED:    Brooklyn, New York
             February 22, 2010

/s/
ERIC N. VITALIANO
United States District Judge